IN THE SUPREME COURT OF NORTH CAROLINA

 2021-NCSC-72

 No. 20A20

 Filed 18 June 2021

 IN THE MATTER OF: E.S. and E.S.S.

 Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from orders entered on

 3 December 2019 by Judge Hal G. Harrison in District Court, Watauga County. This

 matter was calendared for argument in the Supreme Court on 22 April 2021 but

 determined on the record and briefs without oral argument pursuant to Rule 30(f) of

 the North Carolina Rules of Appellate Procedure.

 Chelsea Bell Garrett for petitioner-appellee Watauga County Department of
 Social Services.

 Michelle FormyDuval Lynch for appellee Guardian ad Litem.

 David A. Perez for respondent-appellant father.

 Leslie Rawls for respondent-appellant mother.

 BARRINGER, Justice.

¶1 Respondent-mother is the biological mother of E.S. (Elyse) and E.S.S.

 (Elizabeth),1 and respondent-father is the biological father of Elizabeth. Respondent-

 mother appeals from the trial court’s order finding that it was in Elyse’s best interests

 1 Pseudonyms are used to protect the juveniles’ identities and for ease of reading. A

 pseudonym will also be used to protect the identity of Elizabeth’s twin, Ida, who passed away
 as an infant.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 to terminate her parental rights. Although respondent-mother filed a notice of appeal

 as to Elizabeth, respondent-mother has abandoned all arguments relating to the trial

 court’s termination of her parental rights as to Elizabeth and the trial court’s best

 interests determination for Elizabeth because respondent-mother did not present or

 discuss any issues regarding Elizabeth in her brief. See N.C. R. App. P. 28(a).

 Respondent-father appeals from the trial court’s order finding that it was in

 Elizabeth’s best interests to terminate his parental rights. Since we conclude that the

 trial court did not abuse its discretion in its best interests determination as to Elyse

 and Elizabeth, respectively, we affirm the trial court’s orders.

 I. Facts

¶2 In December 2017, respondent-mother gave birth to twin girls, Elizabeth and

 Ida. At birth, both Elizabeth and Ida tested positive for methadone. Prior to giving

 birth, respondent-mother tested positive for methamphetamine, methadone, and

 acetaminophen. The twins were suffering from withdrawal and were transferred to

 the pediatric unit before being released to respondents. Ida later passed away on 18

 February 2018 from unknown causes.

¶3 Respondent-father did not live with respondent-mother and Elizabeth but

 stayed at a nearby hospitality house. A social worker with the Watauga County

 Department of Social Services (DSS) stated that respondent-father was incapable of
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 providing care for Elizabeth on his own and that he did not have the proper living

 situation to do so.

¶4 Respondent-mother subsequently tested positive for methamphetamine on

 4 February, 2 March, and 7 March 2018. Respondent-mother’s older child, Elyse2

 (born on 7 May 2004), was also residing with respondent-mother during this time.

 After receiving a report of respondent-mother’s substance abuse and respondent-

 father’s lack of stable housing, DSS filed juvenile petitions on 15 March 2018 alleging

 that Elyse and Elizabeth were neglected and dependent juveniles and obtained

 nonsecure custody of the children.

¶5 In an order entered 31 May 2018, the trial court adjudicated the children as

 dependent juveniles based on stipulations acknowledged by respondents. In a

 separate disposition order filed on 15 June 2018 and amended on 3 July 2018, the

 trial court set the permanent plan for Elyse and Elizabeth as reunification with a

 concurrent plan of guardianship. Respondents entered into case plans that required

 them to complete treatment at a substance abuse recovery center, attend parenting

 classes, attend visitation regularly, submit to drug screens, and maintain safe

 housing, among other requirements. Respondent-mother was also required to

 participate in grief counseling with a licensed provider to learn healthy coping skills

 and maintain stability.

 2 Elyse’s biological father is deceased.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

¶6 In a permanency-planning order entered on 17 January 2019, the trial court

 continued the permanent plan of reunification with a concurrent plan of guardianship

 for Elyse and Elizabeth. The trial court found that respondent-mother had made

 minimal progress on her case plan and was not cooperating with DSS or the guardian

 ad litem (GAL) program. The trial court suspended respondent-mother’s visitation

 with the children until she provided a release of information to the substance abuse

 recovery center, which would allow DSS to “follow up on her treatment progress.” The

 trial court also required her to submit at least two clean drug screens to DSS prior to

 any visitation. Regarding respondent-father, the trial court found that he was making

 adequate progress on his case plan and permitted DSS to increase his visitation with

 Elizabeth.

¶7 After a permanency-planning hearing held on 15 February 2019, the trial court

 found that respondents were not making adequate progress on their case plans and

 so changed the permanent plan for Elyse to adoption with a concurrent plan of

 guardianship and changed the permanent plan for Elizabeth to guardianship with a

 concurrent plan of adoption. Respondent-mother had not visited Elyse and Elizabeth

 since September 2018 because she failed to submit clean drug screens, and

 respondent-father had not visited Elizabeth since January 2019 because he refused

 to participate in drug screens. The trial court also found that respondent-father had
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 not maintained stable housing and that he admitted to using methamphetamine as

 recently as two days before the permanency-planning hearing.

¶8 The trial court held another permanency-planning hearing on 11 April 2019

 and found that respondents had made little to no progress on their case plans and

 that the conditions that led to the removal of Elyse and Elizabeth from the home still

 existed. The trial court maintained the permanent and concurrent plans for Elyse

 and Elizabeth.

¶9 On 8 May 2019, DSS filed motions to terminate respondent-mother’s parental

 rights to Elyse and Elizabeth and respondent-father’s parental rights to Elizabeth

 pursuant to N.C.G.S. § 7B-1111(a)(1), (6), and (7). After the termination-of-parental-

 rights hearing held on 26 and 27 September 2019, the trial court found that grounds

 existed to terminate respondents’ parental rights pursuant to N.C.G.S. § 7B-

 1111(a)(1) and (6) and that termination of respondents’ parental rights was in Elyse’s

 and Elizabeth’s best interests pursuant to N.C.G.S. § 7B-1110(a).3 Accordingly, the

 trial court terminated respondent-mother’s parental rights to Elyse and Elizabeth

 and respondent-father’s parental rights to Elizabeth. Respondents appealed.

 3 In an order entered on 1 October 2019, the trial court also amended the order from

 the 11 April 2019 permanency-planning hearing to correct the permanent plan for Elizabeth,
 which had been inadvertently reversed. The trial court corrected the permanent plan for
 Elizabeth to properly reflect adoption as the permanent plan with a concurrent plan of
 guardianship.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

¶ 10 On appeal, respondents do not challenge the trial court’s grounds for

 termination but instead argue that the trial court abused its discretion in concluding

 that it was in Elyse’s and Elizabeth’s best interests to terminate respondents’

 parental rights. Respondent-mother only challenges the trial court’s best interests

 determination as to Elyse.

 II. Applicable Law

¶ 11 The termination of parental rights is a two-stage process consisting of an

 adjudicatory stage and a dispositional stage. See N.C.G.S. §§ 7B-1109 to -1110 (2019).

 If, during the adjudicatory stage, the trial court finds grounds to terminate parental

 rights under N.C.G.S. § 7B-1111(a), the trial court proceeds to the dispositional stage

 where it must “determine whether terminating the parent’s rights is in the juvenile’s

 best interest” after considering the following criteria:

 (1) The age of the juvenile.

 (2) The likelihood of adoption of the juvenile.

 (3) Whether the termination of parental rights will aid in
 the accomplishment of the permanent plan for the
 juvenile.

 (4) The bond between the juvenile and the parent.

 (5) The quality of the relationship between the juvenile and
 the proposed adoptive parent, guardian, custodian, or
 other permanent placement.

 (6) Any relevant consideration.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 N.C.G.S. § 7B-1110(a). The trial court must “make written findings regarding the

 [aforementioned criteria] that are relevant.” Id. “A factor is relevant if there is

 conflicting evidence concerning the factor, such that it is placed in issue by virtue of

 the evidence presented before the district court.” In re C.J.C., 374 N.C. 42, 48 (2020)

 (cleaned up) (quoting In re A.R.A., 373 N.C. 190, 199 (2019)). “We review the trial

 court’s dispositional findings of fact to determine whether they are supported by

 competent evidence.” In re J.J.B., 374 N.C. 787, 793 (2020).

¶ 12 “The trial court’s assessment of a juvenile’s best interests at the dispositional

 stage is reviewed solely for abuse of discretion.” In re A.U.D., 373 N.C. 3, 6 (2019).

 “An ‘[a]buse of discretion results where the court’s ruling is manifestly unsupported

 by reason or is so arbitrary that it could not have been the result of a reasoned

 decision.’ ” In re T.L.H., 368 N.C. 101, 107 (2015) (alteration in original) (quoting

 State v. Hennis, 323 N.C. 279, 285 (1988)).

 III. Respondent-mother’s Appeal

¶ 13 Respondent-mother only challenges the trial court’s dispositional

 determination for her oldest child, Elyse. Respondent-mother argues that the trial

 court abused its discretion in determining that termination of her parental rights was

 in Elyse’s best interests. We disagree.

¶ 14 Respondent-mother first argues that the trial court failed to comply with the

 statutory mandate of N.C.G.S. § 7B-1110(a) because it did not “expressly consider”
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 and receive evidence regarding whether Elyse consented to adoption. Since Elyse was

 fifteen years old at the time of the termination hearing and N.C.G.S. § 48-3-601(1)

 requires minors over twelve years old to consent to adoption, respondent-mother

 contends that N.C.G.S. § 7B-1110(a)(1)−(3) and (6) “required the court to consider the

 need for her consent to any adoption” because Elyse’s refusal to give consent would

 create a barrier that would diminish the likelihood of her adoption. Respondent-

 mother also challenges the portion of finding of fact 11 stating that termination of

 respondent-mother’s parental rights was the “only barrier” to achieving the

 permanent plan of adoption because N.C.G.S. § 48-3-601 requires Elyse’s consent for

 adoption.

¶ 15 The controlling statute for termination-of-parental-rights proceedings does not

 expressly require a trial court to consider a child’s consent to adoption in making its

 dispositional decision. N.C.G.S. § 7B-1110(a). In fact, N.C.G.S. § 48-3-601(1) is found

 in an entirely separate chapter of the General Statutes of North Carolina, which

 concerns adoption. The trial court in the dispositional stage of a termination-of-

 parental-rights hearing is charged with “determin[ing] whether terminating the

 parent’s rights is in the juvenile’s best interest.” N.C.G.S. § 7B-1110(a) (emphasis

 added). Testimony concerning Elyse’s interest in adoption may be admissible

 evidence during the dispositional stage and considered by the trial court. However,

 the dispositional determination by a trial court that terminating the parent’s rights
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 is in the juvenile’s best interests is not an abuse of discretion merely because a child

 over the age of twelve indicates a lack of interest in adoption. See In re M.A., 374 N.C.

 865, 879−80 (2020) (affirming the trial court’s best interest determination after

 holding that while a child’s consent to adoption is relevant to a trial court’s best

 interests determination, it is not controlling and that findings and conclusions

 concerning likelihood of consent to adoption were not required); In re M.M., 200 N.C.

 App. 248, 258 (2009) (“Further, nothing within [N.C.G.S. § 7B-1110] requires that

 termination lead to adoption in order for termination to be in a child’s best

 interests.”), disc. review denied, 364 N.C. 241 (2010). Notably, there was no testimony

 or evidence that Elyse had no interest or would not consent to adoption. Therefore,

 we reject respondent-mother’s argument that the trial court should have expressly

 considered Elyse’s consent to adoption and respondent-mother’s challenge to finding

 of fact 11.4

¶ 16 Respondent-mother next argues that the trial court abused its discretion in

 determining that termination of her parental rights was in Elyse’s best interests

 4 Respondent-mother also argues that the GAL provided Elyse with incorrect
 information regarding the educational benefits of adoption, and therefore, respondent-
 mother asserts that to the extent Elyse consented to adoption, it could not have been knowing
 and voluntary. Since we have rejected respondent-mother’s argument that the trial court
 should have expressly considered Elyse’s consent to an adoption, we reject respondent-
 mother’s argument that Elyse’s consent to an adoption could not have been knowing and
 voluntary for the same reasons.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 because it failed to consider Elyse’s bond with respondent-mother and whether Elyse

 consented to adoption. Respondent-mother argues that “it does not appear the court

 considered Elyse’s bond with [respondent-]mother” because “[t]he record is replete

 with references to their love and connection and to . . . Elyse’s wish to return to her

 mother.” The uncontested evidence does demonstrate that Elyse loves respondent-

 mother and has a bond with her. As such, the trial court was not required to make a

 finding on this issue. See In re E.F., 375 N.C. 88, 91 (2020) (“Although the trial court

 must ‘consider’ each of the statutory factors . . . we have construed [N.C.G.S. § 7B-

 1110(a)] to require written findings only as to those factors for which there is

 conflicting evidence.” (quoting N.C.G.S. § 7B-1110(a))).

¶ 17 Additionally, “the bond between parent and child is just one of the factors to

 be considered under N.C.G.S. § 7B-1110(a), and the trial court is permitted to give

 greater weight to other factors.” In re Z.L.W., 372 N.C. 432, 437 (2019). In this case,

 the GAL testified that while Elyse wished the situation with respondent-mother to

 be different, Elyse wanted to remain with her foster parents. The trial court also

 found that Elyse had not seen respondent-mother in nearly twelve months due to

 respondent-mother’s noncompliance with the trial court’s orders. Therefore, we reject

 respondent-mother’s argument.

¶ 18 The trial court was not required to consider Elyse’s consent to adoption for its

 dispositional conclusion pursuant to N.C.G.S. § 7B-1110, nor was the trial court
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 required to make findings as to Elyse’s bond with respondent-mother when it was

 uncontested. Therefore, the trial court did not abuse its discretion in concluding that

 it was in Elyse’s best interests to terminate respondent-mother’s parental rights, and

 we affirm the trial court’s orders.

¶ 19 Respondent-mother has abandoned any challenges to the trial court’s

 termination of her parental rights as to Elizabeth and to the trial court’s best

 interests determination concerning Elizabeth because respondent-mother did not

 present or discuss any arguments in her brief. See N.C. R. App. P. 28(a).

 IV. Respondent-father’s Appeal

¶ 20 Respondent-father argues that the trial court abused its discretion in its best

 interests determination as to Elizabeth because it failed to make “necessary and

 proper” findings of fact regarding a possible relative placement as required by In re

 S.D.C., 373 N.C. 285, 290 (2020). We disagree.

¶ 21 One month prior to the termination hearing, respondent-father submitted to

 DSS a request that his third cousin be a potential placement for Elizabeth. The

 investigation was still pending at the time of the termination hearing. In the

 termination order, the trial court found that

 b. [Elizabeth] is currently in an adoptive placement and
 is very bonded to the foster parents and her adoptive
 siblings. She has been in this placement all but
 approximately five months of her 18 months in DSS
 custody.
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 c. [Elizabeth] has not seen [respondent-mother] since the
 fall of 2018 or [respondent-father] for at least six (6)
 months.

 d. The proposed kinship placement suggested by
 [respondent-father] would not be appropriate as
 [Elizabeth] has been with her foster family for most of her
 life and [respondent-father] just suggested this kinship
 placement last month. Additionally, the potential kinship
 provider expressed reservations to the GAL regarding
 [respondent-father] possibly interfering and causing
 problems.

¶ 22 The dispositional findings show that the trial court considered the relative

 placement and made findings of fact sufficient to allow this Court to review the trial

 court’s dispositional determination for abuse of discretion. We therefore reject

 respondent-father’s argument that the trial court abused its discretion by concluding

 that termination was in the best interests of Elizabeth. “[T]he trial court is not

 required to make findings of fact on all the evidence presented, nor state every option

 it considered.” In re J.A.A., 175 N.C. App. 66, 75 (2005). The trial court is also not

 “expressly directed to consider the availability of a relative placement in the course

 of deciding a termination of parental rights proceeding.” In re S.D.C., 373 N.C. at 290.

¶ 23 In In re S.D.C., this Court recognized that a trial court “may treat the

 availability of a relative placement as a ‘relevant consideration’ in determining

 whether termination of a parent’s parental rights is in the child’s best interests” and

 indicated that when determined to be a relevant consideration, “the trial court should

 make findings of fact addressing ‘the competing goals of (1) preserving the ties
 IN RE E.S. AND E.S.S.

 2021-NCSC-72

 Opinion of the Court

 between the children and their biological relatives; and (2) achieving permanence for

 the children as offered by their prospective adoptive family.’ ” Id. (emphasis added)

 (quoting In re A.U.D., 373 N.C. at 12). When there is no evidence presented at the

 termination hearing tending to show that a potential relative is available for the

 juvenile, the trial court need not consider or make findings on the matter. In re

 S.D.C., 373 N.C. at 291. Furthermore, the dispositional findings demonstrate that

 the trial court adequately considered the “critical circumstances” regarding

 Elizabeth’s placement.

¶ 24 Since this Court concludes that the trial court’s decision on this matter was not

 so manifestly unsupported by reason as to constitute an abuse of discretion, we affirm

 the trial court’s order terminating respondent-father’s parental rights to Elizabeth.

 V. Conclusion

¶ 25 In summary, we conclude that the trial court did not abuse its discretion in

 determining that termination of respondent-mother’s parental rights was in Elyse’s

 best interests and that termination of respondent-father’s parental rights was in

 Elizabeth’s best interests. Respondent-mother abandoned any and all challenges to

 the trial court’s order terminating her parental rights to Elizabeth and the trial

 court’s best interests determination as to Elizabeth. Accordingly, we affirm the trial

 court’s orders terminating respondents’ parental rights.

 AFFIRMED.